GILES GILBERT *vs.* CHARLES H. ELDRIDGE and others.

September 7, 1891.

**Riparian Rights—Severance from Shore-Land.**—The riparian right of the owner of lands on the shore of navigable water, as on our great lakes, to reclaim, improve, and occupy the land submerged by shallow water beyond the shore, may be disassociated from the shore-land by the act of the owner, so that a conveyance by him of the shore-land would not include such riparian rights as incident thereto.

**Same—Platting of Shore and Submerged Land.**—This principle applied in a case where the owner of shore-land platted it, together with the shallows beyond the shore, into town blocks and streets.

**Same— Conveyance of Inland Platted Block—Effect of Encroachment of Water to such Block.**—The owner, after such platting, having conveyed an inland block with reference to the platting, and the water having gradually encroached upon the land until the shore-line reached that block, *held,* that the riparian right to reclaim and use the platted blocks and streets in the water did not attach to the block thus conveyed as incident thereto.

Appeal by plaintiff from a judgment of the district court for St. Louis county, where the action was tried by *Ensign,* J.

*W. W. Billson,* for appellant.

*White, Reynolds & Schmidt,* for respondents.

DICKINSON, J.[1] At the head of Lake Superior a peninsula of land called "Rice's Point" extends from the main-land eastward into the water. On the northerly or northeasterly side of this peninsula is the Bay of Duluth, constituting the present harbor of the city of Duluth. On the south of the peninsula is St. Louis bay. In 1858 one Orrin Rice, who then owned this land, platted the same as a town-site, and filed the plat thereof in the proper public office. The name of Rice's Point was given to the platted lands. Embraced in this platting were two blocks designated, respectively, by numbers as blocks "108" and "110." At that time the land comprising block 110 was situate on the northeasterly shore of the peninsula. The line of low water crossed the block, so that the northeasterly part of

[1] Collins, J., took no part in this case.

it was within the shallow water of the Bay of Duluth, while the southwesterly part of it was dry land. Block 108 was southwest of block 110, separated from it by a street, and was wholly above and beyond the shore-line. The platting of Rice extended into the shallow water of the Bay of Duluth, beyond the shore-line; other lots, blocks, and streets being platted in the shallow water beyond block 110. December 31, 1858, Rice, by warranty deed in the usual form, conveyed block 110 to one Wilson, to whose rights the defendants have succeeded, and block 108 to one Meeker, to whose rights the plaintiff has succeeded. In 1873 the common council of the city of Duluth, under authority of the legislature, by ordinance established a dock-line in the waters of the bay of Duluth, several hundred feet distant from this block 110, and nearly parallel with its water-front; thereby definitely limiting the right to construct wharves and other structures to that part of the bay within such dock-line. In 1872, for the improvement of the harbor of Duluth, the city caused a ship canal to be dug through another point of land lying between the Bay of Duluth and Lake Superior, which resulted in so changing the currents of water in the bay that from this, with perhaps other causes, the water gradually encroached upon and washed away the shore at the easterly end and on the northeasterly side of Rice's Point. The process of erosion and encroachment was so gradual as not to be perceptible, except by comparison of the conditions in different seasons. In 1885 this encroachment of the water had extended so far inland, on the northeasterly side of this point, that the shore-line at low water then ran across block 108, block 110 and the intervening street having become submerged. At the time of the commencement of this action a process of filling was being carried on under the authority of the defendants, so as to again raise the surface of block 110 and of the intervening street above the surface of the water. Thereupon the plaintiff instituted this action to prevent by injunction such attempted and proposed reclamation. The plaintiff rests his claim of right to the relief sought upon the ground that, by the gradual and imperceptible encroachment of the water, and the retrogression of the shore-line, his land (block 108) has come to be the riparian estate, and that whatever riparian rights were originally in-

cident to the shore-land are now vested in him as the riparian owner; and that the title of the defendants to block 110, and the riparian rights which may have been incident thereto, have been extinguished. The decision and judgment of the district court being in favor of the defendants, the plaintiff appealed.

We shall assume, in accordance with the claim of the plaintiff, but without so deciding, that it is a general principle of the common law that when the sea or navigable water, although not forming a boundary between adjacent estates, gradually encroaches upon and submerges the shore-land, the owner of the land thus won by the water becomes divested of his estate, and of such riparian rights as had been incident thereto; and that, in general, whoever may own the land constituting the shore has also, as incident thereto, the ordinary rights of riparian owners over the submerged lands beyond the shore, and out to the point of actual navigability. But, while this may be the general rule of law, it is not necessarily applicable alike in all cases. It may be controlled in its operation by the conditions under which titles have been acquired and held; and we are of the opinion that, by reason of the facts to which we have referred, of the platting of the submerged lands as well as of the upland, and of the conveyances of the platted blocks, under which these parties acquired titles, it is not open to the plaintiff to interpose objection to the refilling of the submerged block 110, or to assert that the defendants' title thereto or rights therein have become extinguished.

Of course, the plaintiff cannot consistently claim that by the retrogression of the shore-line, and the submerging of block 110, he has acquired a title to that block. The shore-line did not constitute a boundary between the property of the plaintiff and that of the defendants; and, if we accept the theory of the plaintiff, that by the gradual submergence of block 110 the defendants' title became divested, it did not pass to the plaintiff. Not until and only as the defendants' title became extinguished, by the retirement of the shore-line, to and across the line of boundary between the two blocks, did the plaintiff acquire any proprietary right or interest in the premises beyond that boundary. If the defendants lost their title, it was by the slow process of erosion, and little by little, as the water advanced upon the

land. If the title was thus gradually divested as fast as the shore-line was worn away, the title either was extinguished, or, if it was transferred or passed to any other holder, it was to the state; and when, at length, the last thread of shore-land on block 110 was submerged, the title had either become extinct, or had passed to the state. As the line forming the boundary between the two blocks was crossed by the advancing water, the title to the submerged block, if extinguished by the encroachment of the water, did not suddenly revive, to vest in the plaintiff; and, if already vested in the state, it did not pass from it to the plaintiff. If, then, it be conceded that the defendants lost their title, it is certain that the plaintiff never acquired it. The utmost that he can reasonably claim is that by reason of the gradual encroachment of the water, submerging the defendants' land and hence divesting them of their title, the plaintiff's land (block 108) has come to be the shore-land, and that, as *incident* thereto, he has acquired the ordinary rights of riparian owners, including the exclusive and riparian right to refill the submerged block 110, or to otherwise improve it, and to occupy it for his private purposes.

Our inquiry, then, is narrowed to the question whether the plaintiff has become thus possessed of such rights, so that he may be heard to complain of the defendants when they proceed to fill in and reclaim the submerged block. The state not only does not complain, but, impliedly, from the establishing of the dock-line, it concedes, and ever since 1873 has conceded, the right to reclaim, improve, and use the submerged lands. *Miller* v. *Mendenhall*, 43 Minn. 95, (44 N. W. Rep. 1141,) and cases cited. The defendants undoubtedly formerly enjoyed that right as respects this block of land, and might certainly have exercised it, at least at any time before the last thread of their land became submerged. The only question is whether that right has now come to be in the plaintiff. The defendants have never transferred it, and, if the plaintiff has become possessed of it, it is only because it must be deemed to attach as an incident to the shore-land, and to have passed to him as the owner of block 108, as the shore-line receded until it reached that land.

We have heretofore decided that riparian rights of this nature, although originally incident or appurtenant to the shore-land, do not

necessarily remain so; that they are property rights subject to the control of the owner; that they may be transferred by him, and remain in existence, and be enjoyed by his grantees, although having no interest in the estate to which such rights were originally incident. *Hanford* v. *St. Paul & Duluth R. Co.*, 43 Minn. 104, (42 N. W. Rep. 596, and 44 N. W. Rep. 1144,) and see *Miller* v. *Mendenhall, supra.* See, also, to the same effect, *Ladies', etc., Society* v. *Halstead*, 58 Conn. 144, (19 Atl. Rep. 658.) It follows that when, by the act of the owner of the principal estate, such rights have been legally disassociated therefrom, the ordinary principles of law relating to the existence, transfer, and enjoyment of merely incidental rights·would to a great extent cease to be applicable. Subsequent changes in the condition and right of enjoyment of the principal estate would not, of necessity, correspondingly and incidentally affect such rights. To illustrate, we will suppose that after Rice, the owner of this peninsula, and hence entitled to the right to reclaim, improve, and use the submerged lands, had platted it, and recorded his plat, as he did do, he had by deed conveyed the blocks lying in the shallow water outside of this block 110, across which the shore-line then ran; that such deed had been recorded, so as to be notice to all subsequent purchasers; and that thereafter he had conveyed to another person block 110. Except for the prior platting and conveyance of the submerged lands, the deed conveying the shore-land would have been effectual to transfer to the grantee the riparian rights of Rice, naturally incident thereto. But in view of those facts, and under the late decisions to which we have referred, the result would not be so. The platting and conveyance of the lands in the water beyond the shore-line would be legally effectual to transfer to the grantee all the right which Rice might have to reclaim and occupy such lands. To that extent the riparian rights belonging to him as the owner of the shore-land would be divested and transferred to his grantee. He would thereafter be precluded from enjoying such rights by virtue of his continued ownership of the shore, not merely by reason of an estoppel springing from any covenants which may have been embraced in his deed, but because he had effectually conveyed those property rights which had been appurtenant to his shore-

land. His grantee would have acquired, at least as against him and those who might succeed to his estate, the legal right to occupy, improve, and enjoy the submerged lands, subject only to the paramount rights of the state. This right, thus coming to exist in another than the owner of the shore estate, and enjoyable independent of it, could no longer be deemed incident to that particular estate or a part thereof. By the subsequent conveyance by Rice of the shore-land, these rights would remain unaffected. They would not pass by the deed as incident or appurtenant to the land conveyed.

As Rice might have conveyed the rights which he, as the owner of the shore-land, had in the submerged land, so, and for the same reasons, he might have conveyed the land above low-water mark, and have reserved the rights naturally incident thereto in respect to the shallows lying beyond the shore; and the grantee, in a deed clearly importing an intention to limit the grant to the land above the shore-line, would acquire only such land.

The proposition thus stated and illustrated, that the owner of the shore-land may legally disassociate therefrom and transfer to another, or reserve to himself, to be enjoyed independent of the shore-land, his riparian right to reclaim and use the shallows lying beyond, so that neither he nor his grantee of the shore-land may thereafter claim such rights as incident to their estate, is applicable to the facts of this case. When Rice conveyed block 108, (through which conveyance the plaintiff's title was derived,) he had already made and recorded the plat embracing not only the dry land, but the shallows beyond. Block 110, the land here in controversy, was located partly within the shoal water beyond the shore, and still beyond that other blocks, with intervening streets, were platted. Rice, and no one else, (subject to certain public rights which have not been, and probably never will be, asserted, and which do not affect the question before us,) then had the exclusive right to appropriate the submerged lands to occupancy, improvement, and use in the manner indicated by the platting,—that is, in separate or distinct parcels, as town blocks and streets,—wholly independent of the future ownership or use of his shore-land. No principle of policy or of law forbade him, as the owner of all this property and of these property rights, from

thus doing, however it might result in adding to or impairing the natural advantages of the shore-land, or that lying inland from the shore, all of which he owned. Subsequent purchasers from him of the shore-land, or of the inland, purchasing with reference to the plat, might well be deemed to take their estates subject to the disadvantages as well as to the advantages resulting therefrom. He might thus restrict or limit the rights incident to his shore-land or inland, so as to bind, not only himself, but his grantees. *Yates* v. *Judd,* 18 Wis. 118. It was said in *Wilder* v. *City of St. Paul,* 12 Minn. 116, (192, 204:) "The purchaser of a lot according to such plan acquires a right to every advantage, privilege, and easement which the plan represents. His lot is made valuable by other streets, as well as the one on which it fronts. By the sale of a lot according to such plan there is an implied warranty that the purchaser shall enjoy all the privileges and benefits which it is calculated to secure, and by no private arrangement can he be deprived of this." And so it may be said that such a purchaser takes subject to whatever disadvantages may be involved in the platting. For instance, as against the purchaser of block 108, Rice, although he had remained the owner of the riparian block 110, would have been precluded by his platting and conveyance from afterwards appropriating the street platted in the shallow water beyond it to his private use, so as to prevent the improvement and use of it as a street. But the grantee of block 108, conveyed with reference to the plat, would also be precluded from denying to the grantor or to his assigns the right to occupy, improve, reclaim, and use the blocks platted in the shallow water, even though in the course of time the shore-line should gradually move inland so as to reach this block 108, as has actually occurred. It was perfectly apparent from such a platting that Rice intended thereby to devote the platted blocks within the shallow water to disposal and use in separate parcels, and wholly independent of the ownership or use of the shore-land; and when the plaintiff's grantor purchased and accepted a conveyance of block 108, although the deed was in the ordinary form and included the "appurtenances thereunto belonging," it must have been understood that no right or interest in the blocks located in the water passed thereby. Even if

the block conveyed had been in fact situate on the shore, it could hardly have been supposed that it was intended that the deed should, in legal effect, include all the platted blocks lying beyond the shore; or that, notwithstanding the platting of the submerged lands, it was intended that, by the conveyance of the shore block alone, with its boundary lines on all sides precisely defined by means of the plat, the ordinary and unlimited rights of riparian ownership should pass with the deed, so that the grantee should acquire thereby the exclusive right to occupy, improve, and use for his own benefit all the platted blocks and streets lying beyond. If, under such circumstances, a conveyance of the block situate on the shore would have been deemed not to have been intended to transfer to the grantee the existing property rights in respect to the platted lands beyond the shore, then, for the same reason, the gradual retirement of the shore-line, until the plaintiff's block has come to be on the water-front, has been of no effect to vest in him any property rights in respect to such submerged blocks. The conveyance of a platted inland block was as much subject to the effect of the platting as a conveyance of a riparian block would be; and if in the latter case the ordinary riparian rights—that is, the exclusive right to occupy, improve, reclaim, and use the blocks lying in the water—would not pass, then, for the same reason, the gradual retirement of the shore-line would not be incidentally attended with the consequence of vesting such rights in the plaintiff. He took his title subject to the existence of rights which, at least as between parties claiming under the common grantor and in accordance with the platting, had ceased to depend upon the location of the shore-line, or to be affected or divested by the shifting of that line.

We have treated the conveyance to the grantor of the plaintiff as having been made with reference to the plat. It is true that the finding of the court does not show that the conveyance was *in terms* so made, and that probably would not be necessary to affect the grantee in the manner above considered. We suppose, however, that we are justified in assuming that the conveyance was really, if not in express terms, made with reference to the plat, not only from the finding that the conveyance was of the platted block numbered 108

of Rice's Point, but because the plaintiff in his complaint alleges his ownership of the block so described, "according to the recorded plat thereof," etc.

The conclusions which we have expressed, as to the power of a riparian owner upon a body of water which does not form a boundary between his own and a neighboring estate, by his own act, to disassociate his riparian rights in the submerged lands from his principal estate and with the consequences here indicated, naturally and logically follow from our former decisions above cited, and we know no good reason why those decisions should not be followed to the results here stated. The undoubted and exclusive owners of riparian rights, of rights in real property susceptible of enjoyment independent of the riparian lands, are thus held to be competent, not only to themselves use valuable property, the right to use which belongs exclusively to them, but, if more desirable, to dispose of their rights, so that their grantees may make the property useful. Purchasers of the principal estate, after the riparian rights have been by any means disassociated therefrom, acquire all that they purchase. It is no hardship if, as in this case, the purchaser of a part of the platted inland is denied the advantage of claiming, to the exclusion of former owners, interests in property which he never purchased, and probably never expected to acquire, and which, if it vests in him at all, does so only by means which may be fitly called accidental. And on the other hand, if we have rightly declared and applied legal principles, those who have purchased and acquired the unquestioned and exclusive right of the riparian owner to occupy and enjoy the use of platted land beyond the line of the shore, whether or not they may have reclaimed the same from the water or otherwise improved it, retain what they purchased; and neither their grantors, nor those who may succeed to the estates of the latter in any of the platted lands, can, by virtue of holding or succeeding to such estates, successfully claim that the rights of the purchasers have been divested, upon the ground that they were incident to the gradually shifting line of the shore.

Judgment affirmed.