CITY OF DULUTH *vs.* ST. PAUL & DULUTH RAILROAD Co. *et al.*

.Argued Jan. 28, 1892.  Decided March 24, 1892.

**Town Plat Construed as to Where a Street Ended.** — The owner of lands on the north shore of a bay of Lake Superior platted the same for town purposes pursuant to the statute.  The platting of blocks and streets was extended into the shallow water south of and beyond the shore.  A street named "Dock Street," and marked as eighty feet wide, was shown as extending along the southerly side of the plat, in the water.  Other streets from the north opened into this street, but were not indicated as extending across or south of it.  South of Dock street, as thus marked, were two continuous parallel east and west lines of considerable length, connected at one end, and thus forming an inclosure which was marked as being forty feet wide.  For what purpose this was platted was not stated.  It appeared to bound Dock street on the south, and the platting was not extended south of this inclosure.  *Held,* that the platting of the narrow strip along the south side of Dock street was effectual to indicate the intention of the dedicator that Dock street, and the streets opening into it from the north, should not be extended south of Dock street; and that the extent of the public easement was thus effectually limited.  *Gilbert* v. *Eldridge,* 47 Minn. 210, followed.

Appeal by the defendants St. Paul & Duluth Railroad Company and Northwestern Fuel Company from an order of the District Court of St. Louis County, *Stearns,* J., made August 31, 1891, refusing a new trial.

The city of Duluth instituted this action to remove the structures and coal bins of the Fuel Company out of the southerly end of Fifth avenue west.  This avenue extends from the high lands down towards the shore of the harbor.  The city claimed that it extended to the navigable waters of the harbor.  At right angles with this avenue and parallel with the general line of the shore was Dock street.  The defendants claimed that Fifth avenue did not extend across Dock street or to the navigable waters of the harbor but ended at Dock street.  This was the question to be determined:  The most important evidence was the plat made in 1871 or 1872 and filed for record and accepted by the city.  A copy of the material part of this map is set out on the next page.  The Railroad Com-

pany claimed to own the land between Dock street and the harbor and had filled it in and leased a part of it to the Fuel Company for a coal dock. When the plat was made no harbor lines had been established, the shore was marshy, its line irregular, and the water shallow.

The issues in the case were tried before the court, and on March 24, 1891, findings were filed and judgment ordered for the city. Defendants made a motion for a new trial, which was denied August 31, 1891, and they appealed to this court.

*Lusk, Bunn & Hadley,* for appellants.

This is a suit to enjoin the defendants from maintaining certain coal docks on grounds which the plaintiff claims are within the limits of Fifth avenue, one of the streets of Duluth. The question is, whether Fifth avenue extends south across Dock street to the harbor. The plaintiff's only claim is that the premises have been dedicated as a street by the plat, and it is not claimed that the premises are a part of any other street or public ground, so that the question is further narrowed to this, whether the grounds where the coal docks are located are, by virtue of said plat, within Fifth avenue. The plat shown is a part of Commerce Division of Duluth, and shows Fifth avenue from Superior street on the north, to Dock street on the south. It terminates at Dock street, and does not cross it. The irregular line crossing Fifth avenue in Center street represents the water's edge, and south of Center street, Fifth avenue was laid out in a marsh, consisting of shoal water, grasses, and brush. Many of the lots and blocks of this plat are laid out in this marsh. According to the plat Fifth avenue is sixty-six feet wide, Dock street eighty feet wide. The plat shows a southern boundary line of Dock street. South of and outside of the latter street was a strip marked on the plat forty feet wide, bounded north by the south boundary of Dock street, and south by a heavy black line. This forty foot strip was also inclosed on the east by a line, and on the west, so far as the map in evidence shows, was not inclosed.

The premises in question on which the defendants' alleged obstructions are maintained, lie in the extension of Fifth avenue south

of Dock street, and cover the space from the south line of Dock street over the forty foot space south of Dock street to the heavy black line before mentioned. The platter of Commerce Division, who owned the land, if any one, conveyed to the St. Paul & Duluth Road the land south of Dock street, including all riparian rights, after the plat was filed and before this suit was commenced.

The question is, what does the plat dedicate? The public take nothing beyond that. It seems too plain to need argument that the avenue was not dedicated through the forty foot strip. It remained private property as completely as any lot or block shown on the plat. *Brisbine* v. *St. Paul & S. C. R. Co.*, 23 Minn. 114. Under the decisions of this court an owner may plat land under water as validly as land above water. Purchasers under the plat, and the city taking a dedication under the plat, take subject to the showing made by the plat. The purchaser of the land out of water takes subject to the right of the original platter, or purchasers under him, to reclaim and raise up the platted land under water. No riparian right attaches to the upland to push out to navigable water as against the owners of submerged land lying in front of the upland. The owner of such submerged land can raise his property out of water and put improvements on it. His right to do so is limited only by the public right of navigation, and not by any riparian right of the upland behind him. *Hanford* v. *St. Paul & D. R. Co.*, 43 Minn. 104; *Miller* v. *Mendenhall,* 43 Minn. 95; *Gilbert* v. *Eldridge*, 47 Minn. 210.

*S. D. Allen*, City Atty., for respondent.

The radical difference in the position taken by appellants and respondent in this case, consists in this: Appellants claim that the same rules apply to this plat as if all the space covered by it was actual land, and that any portion of the space not clearly dedicated is therefore clearly reserved. This, we believe, is the fundamental error of appellants' position. The ownership of the Western Land Association, the original proprietor, terminated at the shore. Certain rights, denominated riparian rights, attach to the shore ownership, and give a right of occupancy out to navigable water. Until the establishment of a dock line, by competent authority, the extent

of these rights, beyond the shore line, is a matter of great uncertainty. The weight of authority seems to be that the riparian privileges, in the absence of an established dock line, end at the point of actual navigability. This fact of indefiniteness as to the extent of the proprietor's rights upon this navigable water, before the establishment of the dock line, makes it impossible to apply, in reference to this plat, the same rule that would be applied to the platting of hard land. In this State a grant of the land forming the bank or shore carries with it the riparian rights, unless, as has been said by the court, they have been fully severed from the parent estate. The true doctrine as to dedication rests upon precisely similar principles. If the street is dedicated down to, or across the water or shore line, the dedicator grants to the public the riparian rights pertaining to the portion of the shore line within the street, unless there are definite reservations in the plat to prevent it. The question in this case as we conceive it, therefore, is: Did the Western Land Association, in making this plat, intend to reserve to itself so much of the riparian rights, appertaining to the shore line, as would give it, or its grantee, the exclusive right of occupancy of any land covered with water in front of Dock street, and to the dock line when established, and did it, in this plat, by word, description, or delineation, make that reservation so clear as to actually reserve the right of occupancy of that space? The city does not question but that the Western Land Association, by a plat properly drawn so as to evidence its intention, might have reserved the right of occupancy of the space between the two parallel lines, indicated upon the front of this plat, in case it should afterwards happen that the dock line should be established in front of these lines. We claim that such reservation has not, in fact, been made.

Fifth avenue was dedicated across low water mark to navigable water. By this dedication the public became a riparian owner, and had the right to wharf out to the open or navigable water as it then existed, or to the dock line as it might thereafter be established. Numerous avenues in this division are laid out, running down towards the water, presumably for the purpose of access to the water. Along the whole front is indicated a street called Dock street. Why is this

street called Dock street? Why is it laid out parallel to, and at the water front, unless it was designed that this street should be at the front of the docks, and for the purpose of affording communication between the great natural highway, the bay or harbor of Duluth, and the other highways on land leading down to, and connecting with it? *Stetson* v. *Bangor*, 60 Me. 313; *Barclay* v. *Howell's Lessee*, 6 Pet. 498; *People* v. *Lambier*, 5 Denio, 9; *Lockwood* v. *New York & N. H. R. Co.*, 37 Conn. 387; *Mayor, etc., of Jersey City* v. *Morris Canal & B. Co.*, 12 N. J. Eq. 547; *Hoboken Land & Imp. Co.* v. *Mayor*, 36 N. J. Law, 540.

In the case of *Gilbert* v. *Eldridge*, 47 Minn. 210, there is language broad enough to have a bearing upon this case. The principle is reiterated that riparian rights attach to the shore ownership. But while stating this principle it is claimed that they may be separated from this ownership, but we cite it to the point that whenever it clearly appears that the party to whom the shore has been granted was understood not to have the right to wharf out and reach navigable water, he is, of course, precluded from claiming such rights. If however the plat of the lands under water does not clearly evidence such an incident, the person or public to whom the shore is granted has the right to wharf out to navigable water or to the dock line.

DICKINSON, J. In 1871–72 the "Western Land Association of Minnesota," owning a tract of land on the north side of the bay of Superior, platted it for town purposes, pursuant to the statute, giving to it the name of "Commerce Division of Duluth." The plat was recorded, and the municipal authorities of Duluth accepted the dedication of streets and other public grounds as shown on the plat. Among these streets were two, designated respectively as "Fifth Avenue" and "Dock Street." "Dock Street," as platted, ran east and west, and was the most southerly street indicated on the plat. At the place to which attention is directed this street was some 300 or 400 feet south of the north shore of the bay, and in the shallow water of the bay, which was only of sufficient depth for the floating of logs and small boats. The land north of this street to the shore line and

beyond it was platted into blocks and streets. The space marked on the plat as "Dock Street" was indicated as being 80 feet wide. That space on the plat was marked and bounded along its north side by the south lines of the southern tier of platted blocks, and on its south side by a continous but not a heavy black line. South of the latter line, and parallel with it, was a *heavy* black line. These two platted lines were connected near the eastern end of Dock street by a line running from one to the other. The space thus inclosed between the two parallel lines was marked on the plat as being 40 feet wide. For what purpose it was intended is not otherwise indicated. Fifth avenue and several other streets ran north and south, and extended in their southerly direction to, and connected with, Dock street, but were not shown as extending south of Dock street. The southerly three or four hundred feet of Fifth avenue, as platted, was in the shallow water of the bay. Some time subsequent to the platting the city of Duluth duly established a dock line, which, as the court found the fact to be, was substantially on the line indicated on the plat by the most southerly and the heavy black line before referred to. The correctness of this finding as to the location of the dock line is called in question, but it will not be necessary to consider this point.

It is conceded, as we understand, that the defendants are exclusively occupying, for their private purposes, as a coal dock, that part of the inclosed strip of land south of Dock street, and which would be within the limits of Fifth avenue if that avenue were extended across Dock street and to the dock line. Such private occupancy also extends north into the limits of Dock street as platted. It does not appear from the findings whether or not that is still a public street. The defendant's occupancy is under a conveyance from the Western Land Association, subsequent to the platting; and the real question in the case is whether by that platting and dedication the public easement extended over the premises so occupied by the defendants. The court found as a fact that Fifth avenue extended southward to the navigable waters of the harbor at the dock line. In effect the decision is that this dedication of the street or right of way extended across the strip of land 40 feet wide, south of Dock street, and as far in that direction as the rights of the landowner ex-

tended.    We think that the court erred in thus construing the plat
by means of which the dedication was effected.    This error was such
that a new trial is necessary.

In construing the plat, as respects the extent of the dedication
thereby made, and the extent of the corresponding relinquishment
by the dedicator of his property rights, it is necessary to consider
particularly the effect of the lines inclosing the narrow strip of land
south of Dock street.    The principle, applicable generally in the con-
struction of written instruments, which forbids that any part to
which meaning and effect can reasonably be ascribed shall be regarded
as meaningless, is applicable here; and these lines on the plat are
not to be rejected as evincing no intention on the part of the dedi-
cator, and as having no reasonable effect.    Not only may effect be
reasonably given to this part of the plat, but, as we think, the dedi-
cator thereby clearly manifested a purpose that the streets above re-
ferred to should not extend over nor south of this inclosed space, ly-
ing south of Dock street.

It seems apparent on the face of the plat that this inclosed space
was not intended as a part of Dock street.    That street, with its open
connections with other streets, is defined so clearly that there can be
no room for doubt as to the lines by which it was intended to be
bounded.    Its width—80 feet—and its name are marked within the
space designated as the street, and north of the inclosed strip to which
attention is directed.    The north line of that inclosure was plainly
intended to mark the southern boundary of that street.    It is by such
lines merely that the boundaries of all the streets on the plat are des-
ignated; and so plats are usually made.    No boundary line of any
street on the plat is, in terms, stated to be a boundary.    Nor can
this inclosed space be deemed to be a street or public way contiguous
to Dock street, and separated from it only by an imaginary line.
That would make the northerly line of this strip entirely meaningless,
and of no effect, unless to conceal or obscure, not to express, the in-
tention.    Nor is there anything indicative of an intention to appro-
priate this tract to any public purpose other than that of a street.
If it had been so intended, the purpose to which it was devoted would
have been in some way shown.    Yet these lines were drawn, and the

inclosure made, for *some* purpose connected with the platting and dedication; and if it was not to mark this strip as being given for some public use, it is natural to suppose that it was to denote that it was intended for the private purposes of the dedicator, or to limit the extent of the dedication for public use. It does not appear what particular private use the proprietor intended to make of it, nor is that necessary. It is enough that the intention was manifested on the plat, as we think it was, to reserve or withhold it from use for streets or other public purposes; or, in other words, *not* to include it in the dedication made for such purposes. The landowner, having the rights of a riparian proprietor, might convey in fee the land above the shore line, and reserve all the private rights in the land under water which were originally appurtenant to the estate,—*Gilbert* v. *Eldridge,* 47 Minn. 210, (49 N. W. Rep. 679;) *Hanford* v. *St. Paul & D. R. Co.,* 43 Minn. 104, (42 N. W. Rep. 596, and 44 N. W. Rep. 1144,)—and so in giving any portion of his land for use as public streets he could confine the dedication within such limits as he might choose to fix. The public might refuse to accept what he might thus offer to dedicate, but an acceptance of the offer would involve an acceptance also of the annexed limitations. If the owner of this land had platted the street as extending southward to the shore or beyond the shore into the water, and had not indicated an intention that the public easement should not extend beyond the street lines shown on the plat, we see no reason to doubt that rights like those attaching to general riparian proprietorship would have attended the dedication, as incident thereto. A street thus platted as extending to or into the water might be farther extended by the public out to the point of navigability. But not so where the dedicator clearly evinces his intention to restrict the dedication within defined boundaries, and to reserve to himself whatever rights he may have in the land beyond such boundaries. *Gilbert* v. *Eldridge, supra.* And such was this case. It seems to us that this forty-foot strip south of Dock street was as plainly intended to be reserved or withheld from dedication to public use as it would have been if it had been subdivided into lots. The platting and inclosing of this tract beyond the limits marked as street boundaries

present on the face of the plat a barrier to the extension of those streets in that direction. We deem it to be manifest that for some reason or purpose the landowner intended to thus limit the extent of his dedication, and that he effectually did so. *Gilbert* v. *Eldridge, supra.*

Order reversed.

(Opinion published 51 N. W. Rep. 1163.)