JOHN W. BRADSHAW *vs.* DULUTH IMPERIAL MILL CO.

Argued Dec. 6, 1892.  Decided Dec. 23, 1892.

**Riparian Proprietor may Sell Submerged Land Separate from the Shore.**

> *Held,* following former decisions, that the right of the riparian proprietor upon navigable waters to improve, reclaim, and occupy the submerged lands out to the point of navigability may be separated from the shore land, and transferred to one having no interest in the parent riparian estate. *Also,* that the platting of "Rice's Point," on Duluth bay, into blocks and streets,—some of the blocks being entirely out in the water, beyond and in front of the shore block,—distinctly indicated an intention on part of the proprietor to separate the shore block from the submerged blocks, and that a deed of the former, according to the plat, would convey no interest in the latter.

**Right, how Affected by Establishment or Change of Dock Line.**

> The establishment of a dock line inside of some of the submerged blocks would not divest any property rights therein, but merely regulate and limit their use; so that, while the dock line remained in force, the owner could not use the property for any purpose inconsistent with the public right of navigation; that the change of location of dock line to a point outside of the lots would remove this limitation, and amount to authority from the state to fill in and build out to the new line.

**Former Decision Concludes only Parties and Privies.**

> An erroneous decision, subsequently overruled, although the law of the particular case, and binding on the parties, does not conclude other parties having rights depending on the same question.

Appeal by plaintiff, John W. Bradshaw, from a judgment of the District Court of St. Louis County, *Baxter,* J., entered September 22, 1892.

Orrin W. Rice received a patent from the United States for the peninsula now known as Rice's Point in Duluth harbor. On December 31, 1858, he filed in the Registry of Deeds in St Louis county a plat of the property. The land was low and the waters around it shallow, and he platted the land including that covered by the shallow water for a considerable distance beyond the shore. In 1859, Rice sold to one Panzi twelve lots in block one hundred and thirty-nine (139) on this plat lying to the east of and about twenty rods out from the shore. Panzi on September 5, 1868, conveyed the lots to plaintiff and one Peter E. Bradshaw. The City of Duluth on March 12, 1873, established the dock line on the west line of Eighth street as shown on the plat. These lots were just outside this dock line and fronted west onto Eighth street. In 1880 a portion of the plat of Rice's Point was vacated, including all the blocks lying inside this dock line. In the same year the vacated portion was replatted as First Subdivision of Rice's Point. The defendant, a corporation, and its grantors bought and owned the lots on the shore and out to the dock line, and drove piles and filled in out to this dock line, and dredged out a channel beyond it, and expended over $450,000 in the erection of a flour mill and appliances. This mill had the capacity of making 6,000 barrels of flour a day. Four-fifths of it, during the season of navigation, was shipped from its doors by vessels down the Great Lakes to market. On December 23, 1886, the city changed the dock line in front of defendants' mill, moving the line out about fifty rods further east into the Bay of Duluth. The defendant claimed that having purchased the shore and all the lots between it and the old dock line it had the rights of a riparian proprietor, and that after the dock line was moved out in 1886, it had the right to fill in and appropriate the space in its front between the two dock lines. It drove piles, filled in, and was about to erect a warehouse on plaintiff's lots when he commenced this action, under the statute to determine this adverse claim of the mill company to his undivided half of the property. The issues were tried in April, 1882, before Hon. *L. L. Baxter*, Judge of the Seventh Judicial District, assigned to sit in the Eleventh District, under Laws 1891, ch. 77. Findings were made that defendant was entitled to reclaim and

occupy this submerged land and enjoining plaintiff from asserting any claim thereto. Judgment was entered accordingly and plaintiff appeals.

*William B. Phelps*, for appellant, cited *Hanford* v. *St. Paul & Duluth R. Co.*, 43 Minn. 104; *Miller* v. *Mendenhall*, 43 Minn. 95; *City of Duluth* v. *St. Paul & Duluth R. Co.* 49 Minn. 201; *Gilbert* v. *Eldridge*, 47 Minn. 210.

*Cash & Williams*, for respondent.

The platting of both shore and submerged land will not of itself sever the submerged land from the shore. *Lake Superior Land Co.* v. *Emerson*, 38 Minn. 406; *Watson* v. *Peters*, 26 Mich. 508: *Richardson* v. *Prentiss*, 48 Mich. 88; *Mariner* v. *Schulte*, 13 Wis. 692; *Norcross* v. *Griffiths*, 65 Wis. 599; *Bailey* v. *Burges*, 11 R. I. 330; *State* v. *Mayor, etc., of Jersey City*, 25 N. J. Law, 525.

The decision of this court in *Lake Superior Land Co.* v. *Emerson*, 38 Minn. 406, regarding this Rice's Point platting, was relied on by defendants in making their extensive improvements, and no subsequent overruling of the doctrine then held should affect their rights. *Levy* v. *Hitsche*, 40 La. A. 500; *Menges* v. *Denther*, 33 Pa. St. 495; *Ohio Life Ins. Co.* v. *Debolt*, 16 How. 416; *Gelpcke* v. *City of Dubuque*, 1 Wall. 175; *Havemeyer* v. *Iowa County*, 3 Wall. 294; *Olcott* v. *Supervisors*, 16 Wall. 678; *Douglass* v. *Pike County*, 101 U. S. 677; *Louisiana* v. *Pilsbury*, 105 U. S. 278; *Farrin* v. *New England Mort. Co.*, 92 Ala. 176.

MITCHELL, J. The only question presented by this appeal is whether the conclusions of law were justified by the findings of fact. These facts, so far as here material, are that one Orrin W. Rice, being the owner of a peninsula, the whole easterly side of which is washed by the waters of the bay of Duluth, in December, 1858, executed and filed a town plat thereof under the name of "Rice's Point." This platting extended a long distance out into the waters of the bay, dividing it into blocks, streets, and avenues in conformity to the platting on dry land. Block eighty-two, (82,) as shown on the plat, was

the shore block. In front of this, and wholly in: the water, there were platted some nineteen blocks, one of which—one hundred and thirty-nine (139)—included the lots in' controversy. In February, 1859, Rice conveyed these lots, according to the recorded plat, to one Panzi, who subsequently conveyed to plaintiff. The deed to Panzi was recorded in March, 1865.

In March, 1873, pursuant to legislative authority, the city established a dock line coincident with the westerly side of Eighth street, as shown on the plat, and between these lots and the shore. In December, 1886, this dock line was, under legislative authority, changed to its present location, coincident with the westerly side of Eleventh street, and outside of the lots in suit. During the interval between March, 1873, and December, 1886, defendant's grantors, to whose rights they have succeeded, acquired title to the shore block eighty-two, (82,) and to all of the water blocks in front of it, down to the old dock line on Eighth street. There are other findings as to a replatting of the land by Munger & Peck in 1888, and a conveyance by them to defendants, according to this replatting, of all the submerged blocks in front of the shore block out to the new dock line; but these facts are immaterial, for they could not affect plaintiff's title, derived through the prior conveyance from Rice to Panzi. Defendant must succeed, if at all, in its claim of title, by virtue of the conveyance to it of the shore block as including the riparian rights to all the submerged blocks out to the point of navigability as established by the new dock line; and this we understand to be the contention of defendant's counsel.

We think that the law of the case is fully covered by our own decisions. It must now be taken as the settled doctrine of this court that the right of the riparian proprietor upon navigable waters to improve, reclaim, and occupy the submerged lands out to the point of navigability may be separated from the shore land, and transferred to and enjoyed by persons having no interest in the original riparian estate; that this riparian right may be so disassociated from the shore land by act of the owner that a conveyance by him of the shore land will not include such riparian right. *Hanford* v. *St. Paul & Duluth R. Co.*, 43 Minn. 104, (42 N. W. Rep. 596, and 44 N. W.

Rep. 1144;) *Gilbert* v. *Eldridge*, 47 Minn. 210, (49 N. W. Rep. 679;) *City of Duluth* v. *St. Paul & Duluth R. Co.*, 49 Minn. 201, (51 N. W. Rep. 1163.) The same doctrine was held in *Miller* v. *Mendenhall*, 43 Minn. 95, (44 N. W. Rep. 1141,) although in that case it was placed somewhat guardedly upon the ground of the estoppel of the grantor by the covenants in his deed; but the case of *Hanford* v. *St. Paul & Duluth R. Co.*, *supra*, expressly put it on broader grounds. This general doctrine is not controverted by counsel, but he insists that the cases cited, and especially that of *Gilbert.* v. *Eldridge, supra*, do not go so far as to hold that the mere platting of land, both shore and submerged, into blocks and streets, will, of itself, sever this right in the submerged land from the shore land, so that a conveyance of the latter according to the plat will not include the rights in the former; his contention being that, in addition to this, there must have been a conveyance of the submerged land prior to the conveyance of the shore land. Even if this were true, it would not affect the present case, for, according to the facts found, Rice conveyed the submerged land in dispute before he conveyed the shore block. But we think counsel is in error as to the ground upon which we placed the decision in *Gilbert* v. *Eldridge*. In that case the force of this same platting of "Rice's Point," and of conveyances by Rice according to the plat, as indicating an intention to separate the submerged land from the shore land, was considered and passed upon. There the shore block and the submerged land were conveyed to different parties on the same day, but in the opinion no stress is laid upon the relative dates of alienation. The ground upon which the opinion proceeds is that the platting the land into separate or distinct parcels as blocks and streets, some of the blocks being out in the water beyond and in front of the shore block, indicated so clearly an intention to disassociate the two that the grantee of the shore block according to the plat would acquire no interest in the blocks in the water. The question is entirely one of intention, as indicated by the deed, of which the plat, to which it refers, is a part. Where the owner conveys land bounded on navigable waters the law infers an intent to convey all rights to the land under water in front of it, and this rule is too valuable to be varied except by a clear and distinct

indication on the part of the grantor to make the case exceptional. But in no case was it ever held that to do this the proprietor must have conveyed away his right in the submerged land to a third party, before conveying the shore land. All that any of the cases cited by counsel hold is that the mere fact that the boundary on the water of a riparian lot is defined by a line on the plat, (as in *Watson* v. *Peters,* 26 Mich. 508,) or the mere fact that a platted lot bordering on tide water and extending below low-water mark was defined shoreward by a line indicated on the plat, (as in *Bailey* v. *Burges,* 11 R. I. 330,) would not limit the grant of such lots to the lines on the plat, or operate to reserve to the grantor proprietary rights in front of the lots conveyed. But in neither of these cases were any lots platted outside of the shore lots. In *Bailey* v. *Burges* it is expressly stated that the opinion is given in view of that fact, among others; and in *Watson* v. *Peters* it is said that "if, on the face of the plat, by reference to which the defendant bought, there was anything which distinctly indicated an intent on the part of the proprietors to make this case exceptional, and to reserve to themselves any rights in front of the water lots marked on it, after they were sold, the case would be different." Such intent is distinctly indicated in the present case by Rice's platting other blocks in the water in front of the shore block, and then conveying the latter according to the plat. On this point *Gilbert* v. *Eldridge, supra,* is necessarily decisive.

2. It is further contended that the right of a riparian owner to improve, reclaim, and occupy the submerged lands out to the point of navigability is in the nature of a mere license or inchoate right, which, until exercised, may be revoked or taken away at the pleasure of the state; that the effect of fixing the dock line in 1873 between these lots and the shore was to take away this right; and that the establishment of a new dock line outside of the lots in 1886 did not have the effect of reviving it. This contention is based upon a misapprehension both of the nature of the riparian right referred to, and of the purpose and effect of establishing a dock line. It has been decided over and over again by this court that the right of the riparian owner to improve, reclaim, and occupy the submerged land in front of his shore estate to the point of navigability is a vested

property right, which cannot be taken away, even by the state for a public use, without compensation. *Brisbine* v. *St. Paul & Sioux City R. Co.* 23 Minn. 114; *Union Depot, etc., Co.* v. *Brunswick,* 31 Minn. 297,(17 N. W. Rep. 626;) *Hanford* v. *St. Paul & Duluth R. Co., supra.* The old common-law doctrine, or at least what has been generally assumed to be such, and which was adopted in some of the early American colonies, that the crown had a *jus privatum,* or right of private property, in navigable waters and their shores, which it could alienate to a subject, has no place in the jurisprudence of this state. It is the settled law with us that the rights of the state in navigable waters and their beds are sovereign, and not proprietary, and are held in trust for the public as a highway, and are incapable of alienation. *Union Depot, etc., Co.* v. *Brunswick, supra*; *Hanford* v. *St. Paul & Duluth R. Co., supra.*

Hence the doctrine of such cases as *State* v. *Jersey City,* 25 N. J. Law, 525, cited by counsel, that the right of a riparian owner to build wharves, or fill out beyond high-water mark, is while it remains unexercised, a mere license, which the state may revoke at any time, and grant the land under the water to a stranger, is not the law here. Of course the private rights of the plaintiff were subordinate to the public right of navigation, and it was in the power of the state, as trustee for the public, to determine how far these waters were needed for purposes of navigation, and to fix the line of navigability, beyond which it would not be permissible for the owner of the shore estate to reclaim and occupy for private purposes. But the establishment of a dock line neither creates nor destroys rights, but merely regulates and limits the exercise of existing rights. Plaintiff's rights of property in the lots in question were not divested by either the location or change of location of the dock line. So long as the old line remained in force, of course he could not use the lots for any purpose inconsistent with the right of navigation in the waters over them, but when the line was changed this limitation was removed, and the establishment of the new line was authority, as well as an invitation to him from the state, to fill in and build out to that line, or as far in that direction as his property extended. *Miller* v. *Mendenhall, supra.*

Counsel makes the further point in his brief that defendants bought relying upon the law as declared by this court May, 1888, in *Lake Superior Land Co.* v. *Emerson,* 38 Minn. 406, (38 N. W. Rep. 200,) and thereby obtained a vested right which cannot be divested by the subsequent decision in the *"Hanford Case,"* in April, 1890, overruling the *"Emerson Case;"* the doctrine invoked being that so often applied by the federal courts in suits on municipal bonds, to the effect that, where a contract had been made under a settled construction of the statutes or constitution of a state by its highest court, they would hold such construction to be the law of the contract, although the state court had since overruled its former decision. As counsel did not press the point on his argument, it is perhaps not necessary to consider it. But we may suggest that in no view of the case could the doctrine invoked have any application here, for the reason that defendants purchased long before the decision of the *Emerson Case.* It is true, the court finds that in August, 1888, they received from Munger & Peck a deed of certain water blocks, according to Munger & Peck's rearrangement, but it does not appear that the grantors had any title to convey. But, aside from this, it is an elementary principle that an erroneous decision is not bad law; it is no law at all, and never was the law. It is the law of the particular case, and is binding on the parties before the court, but does not conclude other parties having rights depending on the same question.

Judgment reversed, and cause remanded, with directions to enter judgment for the plaintiff.

(Opinion published 53 N. W. Rep. 1066.)