## MARY SCRANTON *vs.* MINNEAPOLIS CITY.

Argued July 6, 1894.   Affirmed Aug. 16, 1894.

No. 8874.

**Dedication of land for a street by platting.**

From the manner in which the plat of "First Division, Remington Park," in Hennepin county was made, and from other facts, it is *held* that it was not intended by the party executing said plat to dedicate all of a certain tract of land, lettered "A" thereon, to ordinary street purposes. The same is *held* as to an earlier, unrecorded plat of the same governmental subdivision.

**Access to public grounds.**

The public have the right of access to all public grounds,—such, for instance, as parks and parkways,—but this right may be reasonably restricted and limited by the authorities.

**Evidence considered.**

*Held,* in this case, that it had not been made to appear that plaintiff has been unreasonably restricted or limited in her right of access to a certain parkway.

Appeal by plaintiff, Mary Scranton, from an order of the District Court of Hennepin County, *Robert D. Russell,* J., made Feb. 17, 1894, denying her motion for a new trial.

Louis F. Menage owned Government Lot one (1) in section eight (8) T. 28, R. 24 on the west bank of lake Harriet in Minneapolis. On March 19, 1883, he employed S. H. Baker, a surveyor, and had him make a platting of this land into lots, avenues and park, and called it Remington Park Second Division, but the plat was never recorded. On December 17, 1883, he deeded to Jessie I. Hammond a piece of the land, correctly describing it by metes and bounds and added, "being that portion of lands heretofore surveyed by S. H. Baker and designated on his map thereof as lots 14, 15, 16 and 17 of block 2 in

Remington Park Second Division." At the time this deed to Hammond was made there was a highway not exceeding twenty feet in width established by common law dedication and long continued usage running on the easterly line of the land so deeded to her. Between this highway and lake Harriet on the east was a strip of land about sixty feet in width covered with native trees and underbrush. Jessie I. Hammond and husband deeded the south half of her piece on June 2, 1887, to John N. Scranton. He died testate January 29, 1892, having devised the land to plaintiff, his widow. His will was admitted to probate and the property assigned to her by final decree of distribution.

Menage and wife conveyed the residue of the Government lot one (1) and other adjacent lands November 28, 1884, to A. O. Hoyt and Hoyt and wife conveyed to Henry B. Beard. On May 29, 1885, Beard made a contract with the Board of Park Commissioners of the city agreeing to plat this land, devoting a large part for public pleasure drives, parkways and boulevard on a plan to be approved by the board. On May 5, 1888, Beard was insolvent and made an assignment of all his property to Charles J. Bartleson in trust for his creditors. Bartleson accepted the trust and by order of the District Court carried out the contract with the board and platted the land into blocks, lots, boulevard, streets, and public drives and parks. The city accepted the plat, paid him $8,200 for the same and filled in the shallow water along the lake shore, graded and improved the boulevard, park and driveway between plaintiff's ground and the lake. The accompanying sketch shows the easterly end of plaintiff's lot and the grounds between it and the lake, as laid out and improved.

Plaintiff brought this action August 5, 1893, claiming that when Hammond bought of Menage, the highway included everything between the land purchased and the lake, that she has succeeded to Hammond's title and rights and owns the riparian rights on the lake and all the land in front of and between her lots and the lake, as shown between the dotted lines on the sketch, but subject to the right of the public to a highway across the same as it existed in December, 1883. The defendant, the City of Minneapolis, answered denying that plaintiff owned anything outside the boundary of her lots, and an easement in the highway in front. The issues were tried and findings filed January 30, 1894, directing judgment that plaintiff is

not entitled to any relief in the premises. She moved for a new trial, but was denied and now appeals.

*A. S. Keyes,* and *John H. Long,* for appellant.

The preponderance of the evidence shows that in 1883, this highway included all the land between plaintiff's lots and the lake, independent of the conclusive evidence shown by the Menage plat. That plat shows a street about seventy feet wide including all the land between plaintiff's lots and low water mark on the lake. The usual width of highways and the natural boundaries and requirements of

the public should be taken into consideration.  *Ellsworth* v. *Lord,*
40 Minn. 337; *Lamprey* v. *State,* 52 Minn. 181; *Hurley* v. *Missis-
sippi. & R. R. B. Co.,* 34 Minn. 143; *Reed* v. *Lammel,* 28 Minn. 306;
*Ames* v. *Lowry,* 30 Minn. 283; *Sanborn* v. *Mueller,* 38 Minn. 27;
*Fitzgerald* v. *Barbour,* 55 Fed. Rep. 440.

Menage's deed to Hoyt contains the exception of the Hammond
tract as shown by said Baker plat.   Hoyt's deed to Beard contains
the same exception, and Beard's plat of First Division of Remington
Park, under which defendant claims, has written on the face of it
the exception of plaintiff's lots as shown by the Baker plat.

The abutting lot owner has in this case paid for the advantage of
having lake front lots, and defendant now attempts to cut the street
down to thirty feet in width and to fence off plaintiff from the en-
joyment of the lake front depriving her of all riparian rights.   The
city now says that a street twenty feet wide is sufficient for mere
purposes of access to her lots and that is all the right to which she
is entitled.   *Adams* v. *Chicago B. & N. R. Co.,* 39 Minn. 286; *Gus-
tafson* v. *Hamm,* 56 Minn. 334; *Taylor* v. *Armstrong,* 24 Ark. 102;
*Wait* v. *May,* 48 Minn. 453; *Delachaise* v. *McGinnis,* 44 La. An.
1043; *Meyers* v. *Mathis,* 42 La. An. 471.

Defendant contends that because one of the descriptions in the
Hammond deed was by metes and bounds that no part of the fee
in the highway in front of these lots passed to the grantee, but the
weight of authority is otherwise.   *Village of Mankato* v. *Willard,* 13
Minn. 13; *In re Robbins,* 34 Minn. 99; *Pettibone* v. *Hamilton,* 40 Wis.
404; *Kneeland* v. *Van Valkenburgh,* 46 Wis. 434; *Norcross* v. *Grif-
fiths,* 65 Wis. 599.

*John Day Smith,* and *C. J. Rockwood,* for respondent.

The Hammond deed conveyed no more than the land described
by metes and bounds.

The recital in the Hammond deed following the description of the
land by metes and bounds is in effect a statement that the two de-
scriptions are identical.   The plaintiff asks the court to hold that
such recital in a deed is constructive notice that they are not iden-
tical, and that the city a subsequent purchaser for value is charged
with such notice.   Constructive notice flowing from matters of rec-

ord is never broader than the facts stated in the record. *Gales'*
*Ex'rs.* v. *Morris*, 29 N. J. Eq. 222.

No part of the fee of the highway passed by this deed. It was a
conveyance of a tract of land contiguous to a highway. The grantee
became entitled to have the indicated street kept open for access and
for the admission of light and air, but the fee of the soil of the in-
dicated street did not pass. The contrary has been held. *Souther-
land* v. *Jackson*, 30 Me. 462; *Palmer* v. *Dougherty*, 33 Me. 502; *Kings
County Fire Ins. Co.* v. *Stevens*, 87 N. Y. 287; *Sibley* v. *Holden*, 10
Pick. 249; *Buck* v. *Squiers*, 22 Vt. 484; *Smith* v. *Slocomb*, 9 Gray,
36; *Cottle* v. *Young*, 59 Me. 105; *Grand Rapids & Ind. R. Co.* v.
*Heisel*, 38 Mich. 62; *Moody* v. *Palmer*, 50 Cal. 31; *Howard* v. *In-
gersoll*, 13 How. 381.

The courts which have adopted different rules are: Connecticut,
*Champlin* v. *Pendleton*, 13 Conn. 23; New Jersey, *Salter* v. *Jonas*, 39
N. J. Law, 469; Wisconsin, *Kneeland* v. *Van Valkenburgh*, 46 Wis.
434; *Norcross* v. *Griffiths*, 65 Wis. 599.

Conceding that the Hammond tract adjoined a public highway
and that the language of the deed was not such as to limit the tract
conveyed to the margin of the highway, what then? Does the fee
of the land pass to a half or to the whole of the highway where a
navigable lake or stream is opposite. This court has held that the
fee to the center only will pass. *Brisbine* v. *St. Paul & S. C. R. Co.*,
23 Minn. 114; *Lake Superior Land Co.* v. *Emerson*, 38 Minn. 406.

The court has more recently adopted and reiterated a different
doctrine, and has recognized in the riparian owners an interest in the
entire space between the bank and the point of actual navigability,
and has permitted the owner to plat such space and divide it into as
many separate tracts and portions as he chooses and to convey each
of the separate portions to different grantees. *Hanford* v. *St. Paul
& D. Ry. Co.*, 43 Minn. 104; *Gilbert* v. *Eldridge*, 47 Minn. 210; *City
of Duluth* v. *St. Paul & D. R. Co.*, 49 Minn. 201; *Bradshaw* v. *Du-
luth Imp. Mill Co.*, 52 Minn. 59.

Plaintiff assumes that the court has cast suspicion upon the Bris-
bine case by these later decisions. On the contrary, the court re-
peatedly and uniformly recognize that decision as a proper rule to
apply in a proper case, and has only said that that decision cannot
be arbitrarily applied to all sorts and conditions of cases.

COLLINS, J.    In this action is involved the right of defendant city to maintain a parkway along the shore of Lake Harriet, in front of plaintiff's premises, and, as an incident, to maintain a fence between a traveled wagon road and the parkway proper.    Both parties claim title to the tract of land between plaintiff's property and the lake, about one hundred feet wide, from a common source one Menage, who owned the same, part of a much larger tract, in 1883.    This larger tract, a government lot, he had previously caused to be platted, subdivided, and named "Remington Park."    The plat was never recorded, but from an inspection it clearly appears that certain portions of the parts intended for public places were to be reserved for park purposes.    Back of the block in which was located plaintiff's premises was a public way, designated as "Bellevue Avenue," but in front there was no public street, unless it was indicated by the fact that the easterly line of block 2, as traced on the plat, was about 100 feet from the lake, and the intervening strip was not subdivided into lots. In 1883 Menage conveyed about three-fourths of an acre of the larger tract to one Hammond, fully and accurately describing it by metes and bounds, and concluding the description by saying that the premises were the same as those designated on a plat of Remington park as lots 14, 15, 16, and 17 of block 2, which was the fact.    The conveyance was duly recorded.    The easterly line of the conveyed land, and as a consequence the easterly line of block 2, paralleled the lake, and coincident with this line was a highway, not exceeding twenty feet wide, established by long-continued user and common-law dedication.    Between this highway and the shore of the lake was a dense growth of native trees and shrubbery.

Soon afterwards, Menage deeded all of the government lot, except the Hammond tract, to one Beard, who thereupon platted it into lots and blocks, naming the plat "First Division of Remington Park," and this plat was properly filed for record.    The land conveyed to Hammond was outlined on the plat as a part of block 10, the distances along its boundary lines being stated in feet and inches.    Its easterly line along its length, of about 216 feet, and therefore the westerly line of the highway already referred to, was the easterly line of block 10.    On this plat, running from the north end of the government lot along the lake shore and the westerly line of the highway to a point south of Hammond's southeast corner, was a heavy black line, which,

after passing the corner, turned to the west, terminating at the west line of the plat, and, for its entire length, forming the easterly or southerly boundary line of the platted blocks. South of this line, after it turned west, was a tract of land, embracing several acres, running back from the lake, all of which must have been dedicated as a street when the plat was made, if that part in controversy was. This tract was not named as a street on the plat, but was lettered "A." Two public ways or streets were designated and named on the plat, but at every point the tract A was cut off and separated from them. At the time the plat was made and filed, and at the time it was approved by the city council as was required by law, defendant city held a contract with Beard for the purchase, for park purposes, of that part of the land which was lettered "A." Now, unless we entirely disregard the line on the plat before mentioned, which evidently was designed to fix the boundaries of tract A on the north and east sides, and overlook other features of the plat, already referred to, including the fact that the city had contracted with Beard to purchase this identical land when he made the plat, and also the fact that the shape of tract A precludes the idea that it was all designated for ordinary street purposes, we must hold that a plain intention not to dedicate the whole of it for such public use was clearly indicated. See *Village of White Bear* v. *Stewart*, 40 Minn. 284, (41 N. W. 1045;) *City of Duluth* v. *St. Paul & D. R. Co.*, 49 Minn. 201, (51 N. W. 1163.)

This brings us to a consideration of the effect of the reference in the Menage-Hammond deed (plaintiff having obtained title to the tract therein conveyed) to the earlier but unrecorded plat; and we assume that this reference was sufficient to put subsequent purchasers, and therefore the city, upon notice of the contents of that plat. We have already stated that when the plat was made, prior to the execution of the deed to Hammond, there was a common-law highway along the easterly line of the tract of land, and that between this highway and the lake shore, some fifty or sixty feet away, was a dense growth of timber and brush; that, although streets and avenues elsewhere on the plat were distinctly designated and named as such, there was nothing on the strip between the Hammond land and the lake to indicate that it was designed, in whole or in part, for public use; and that it clearly appeared from the plat that portions

of the properly designated streets and avenues were reserved for ornamental or park purposes. All of these things are to be considered in determining whether Menage intended to dedicate all of the strip referred to for public use, or, if he did, whether all of the same was for use as a public street. It does not necessarily follow, even if the strip, to its full width, was set apart as public grounds, that all was dedicated, or must be used, for ordinary street purposes; so that, if we concede it to have been shown that an intention to dedicate is manifest from either or both of the plats, we are still of the opinion, taking into consideration the physical features of the locality and the other facts heretofore commented upon, that there was no intention, and certainly there was and is no necessity, to set apart all of this strip of land for use as a public or common thoroughfare.

It is therefore immaterial for us to decide whether Hammond acquired title in fee to the land in front of his premises, subject to the public easement, or obtained no interest in it whatsoever, for in either event plaintiff cannot obtain possession.

The plaintiff further contends, if it be held that the public have an easement in the grounds, that she is entitled to have the fence removed, and to this extent should have relief. If this strip is public ground she has the right of access; but this right is limited. She cannot insist, nor can any one else, that this right is not subject to reasonable restrictions. From the findings it appears that the city has caused openings to be made in the fence, so that plaintiff and the general public can pass through at points but a short distance from her house. It does not appear that she has been unreasonably restricted or limited in the right of access.

Order affirmed.

BUCK, J., absent, sick, took no part.

(Opinion published 60 N. W. 26.)