(Lucas County, Ohio, Court of Common Pleas, November 20, 1896.)

## ANNIE M. HEAD v. ABRAM M. CHESBROUGH.

*Riparian rights.*

1 A conveyance of platted lots which are situated upon the bank of a navigable stream, no part of the bed of the stream being platted, includes all the riparian rights of the grantor in front of said lots to the center of the stream, although such stream is not mentioned in the conveyance. To exclude such rights they should be reserved or excepted in the deed.

PUGSLEY, J.

The plaintiff claims to be the owner of all that part of original lot thirteen in the sub-division of Wausayon tract, which lies northerly of lots eleven and twelve on the plat of Ironville, the same being the bed of the Maumee river extending from said Ironville lots eleven and twelve to the center of the channel, and she asks in this action to have her title quieted to these premises against the defendant.

The material facts are as follows: Prior to January 12, 1870, one David Weaver was the owner of said original lot thirteen (13), which was bounded on the northerly end by the Maumee river, a navigable stream. On said January 12th, 1870, Weaver duly platted a part of said original lot thirteen into town lots, with streets and alleys, and designated the plat as a map of the village of Ironville. On the northerly end of said plat is a tier of lots running from west to east, and numbered consecutively from eleven to sixteen, both inclusive. Between the northerly line of said tier of lots and the southerly line of the river as drawn on the plat, there is a narrow strip or space which was left unplatted. The dimensions of this strip are not given, but according to the scale it is estimated to be five or six feet in width. No part of the bed of the river in front of this narrow strip was platted into lots. In the year 1884, the plaintiff became the owner of said lots eleven and twelve, on the plat of Ironville, and also of all the interest of said Weaver in and to that part of said original lot thirteen lying in front of said platted lots. On the 20th of June, 1885, the plaintiff conveyed to one Bridge, said lots eleven and twelve of the plat of Ironville, together with the privileges and appurtenances to the same belonging, without making any reservation or exception of the riparian or other rights in front of said lots. Thereafter, on August 28, 1895, said Bridge conveyed said lots eleven and twelve to the defendant. The evidence shows that after said plat of Ironville was made and before said lots eleven and twelve were conveyed by the plaintiff to Bridge, said narrow strip of land and some part of the front of said lots eleven and twelve were washed away by the action of the water in the river, and that on June 20th, 1885 the date of the conveyance, the water of the river stood to a greater or less extent upon the entire front of said lots. This is a brief statement of the material facts necessary to be considered in determining the question involved.

The claim on the part of the plaintiff is, that by the plat of Ironville, lots eleven and twelve, did not extend to the river, but that the narrow strip and the submerged land in front of said lots to the center of the river were reserved, and that the conveyance by the plaintiff to Bridge of lots eleven and twelve did not pass the title to the narrow strip and submerged land in front, although prior to the conveyance the narrow strip and a part of the lots had been washed away by the action of the water, and become submerged. On the other hand, it is contended by the defendant, first, that according to the plat of Ironville,

lots eleven and twelve were bounded by the river, and that the conveyance of said plats transferred all the riparian rights of the grantor in front of said lots; and second, that the deed from plaintiff to Bridge of lots eleven and twelve, made June 20th, 1885, after the plaintiff had acquired all the riparian rights which she now claims, and when in fact the lots ran into the water, transferred all the riparian rights of the plaintiff in front of said lots to the center of the river.

The question to be decided is the same as would arise if Weaver had retained the ownership of the entire property, and had made a conveyance to Bridge of lots eleven and twelve, in June, 1885, and under the same circumstances which surrounded the making of the conveyance by the plaintiff.

Assuming, but without deciding, that it was the intention of Weaver in making the plat of Ironville, to separate the upland from the bank of the river and the submerged land in front of the bank, and that a conveyance by him of lots eleven and twelve while the land remained in the same condition as when platted, would extend only to the bank, I am of opinion, after an examination of all the authorities that were cited, that under the facts of this case, the second proposition contended for by the defendant is correct, and that the conveyance made by the plaintiff to Bridge passed to the grantee all the riparian rights of the grantor in front of said lots to the center of the river.

I will not undertake to review all the Ohio decisions in which the subject of grants of land on the shore of navigable streams has been considered, but I will refer only to those which seem to be more nearly analogous to the case at bar. In the case of Day v. Railroad Co., 44 Ohio St. 406, the first paragraph of the syllabus is as follows:

"A general deed of premises lying upon the bank of a river, in which is constructed a canal, conveys the grantor's rights to the center of the stream bounding the property. And to reserve or exclude from the grant any such rights, the conveyance should contain proper words of such reservation or exclusion."

The material facts in this case were these: The Pennsylvania & Ohio Canal Co., under due authority, constructed a canal in the bed of the Cuyahoga river between the east bank and the middle of the river. Thereafter the deed was made to the plaintiffs, the construction of which was the question to be decided. The land conveyed by the deed was situated upon the east bank of the river, and was described by metes and bounds. After giving the courses and distances from the point of beginning, the description proceeds as follows:

"Thence north 72° 30' four chains and twenty-one links to the Pennsylvania and Ohio canal (the east bank of which is hereby understood to be what was formerly the east bank of the Cuyahoga river); thence northerly along the east bank of the Pennsylvania & Ohio canal to a certain point; thence north 69° 45' east one chain and fifty-eight links to the place of beginning."

The east bank of the canal was thus in express terms made the west boundary of the land conveyed: and it was held that all the grantor's rights to the center of the river were conveyed.

The judge delivering the opinion of the court, says, on page 419:

"By the terms of the deed, Kent conveyed to the plaintiffs all the rights he had in this property along the east bank of the river and up "to the Pennsylvania and Ohio canal", and then adds in parenthesis, 'the east bank of which is hereby understood to be what was formerly the east bank of the Cuyahoga river, and he made no reservation of any part of the bed of the river or of any water privileges."

Then, after reviewing several Ohio decisions, the judge says, on page 420:

"If the grantor does not intend to convey the bed of the river in the water-course bounding the land conveyed, he must insert in the instrument of conveyance proper words for the purpose of reservation or exclusion; 'but in the absence of such words, the bed, and consequently the stream itself, passes by the conveyance.' "

In the case of Railroad Co. v. Platt, 53 Ohio St. 254, the syllabus is as follows:

"A conveyance of lands situated upon a navigable stream, the description being by courses and distances from a fixed monument and establishing a boundary line coincident with the line of navigation, conveys the grantor's title as far as the central thread of the stream."

In this case the land in controversy was that part of the bed of the Maumee river lying between the former and present dock lines, and in front of lot eleven, on the east bank of the river. In 1855, the owner of the lot conveyed to the railroad company, by metes and bounds, a part of that lot extended to the former dock line, where the water was nine feet in depth. Subsequently the dock line was changed, and placed further out in the river. After the change the railroad company docked out to the new line, and then the plaintiff brought this action, each party claiming title to the bed of the river between the two dock lines.

Special reasons existed in this case which do not exist in the case at bar, why it was held to be proper to construe the deed as carrying whatever the grantor owned to the center of the river; but the syllabus, which is the law of the case, and the law of every case to which it is applicable, lays down the rule broadly, without reference to the special circumstances of this particular case. I will read parts of the opinion. The judge delivering the opinion, after holding that the plaintiffs acquired no title to the premises in dispute by the deed under which they claimed, says on page 264:

"But from a consideration of the rules which prevail in the construction of grants of this character, we think the premises in controversy passed to the company by the terms of the deed of 1855. It is true of that deed, as well as of the previous proceedings to appropriate, that the Maumee river was not named as the boundary of the lands appropriated or conveyed. But by the strictest construction that could be placed upon the deed, it conveyed not only the land upon the bank of the stream, but all that lay between the water's edge and the original dock line projected where a depth of nine feet of water was available for the purpose of navigation. The terms of the grant do not admit of any broader claim on behalf of the grantor than that she did not expressly convey to the central thread of the stream. If title to the subaqueous lands, lying between the former and the present dock lines, remained in her; it was by virtue of a presumption operating in her favor, notwithstanding the location of the lands expressly granted, the obvious purpose of the grant, and the limited and incidental use of which alone the lands in controversy are susceptible."

Then, at the bottom of page 265:

"The use of the stream for the purpose of navigation was not only within the contemplation of the parties to the deed from Mrs. Hall to the company, but it was the principal and most obvious element of the value of the lands expressly granted.

"These considerations would seem to justify the presumption that a grant of this character is to the central thread of the stream unless apt

terms are employed to limit it. And such appears to be the settled view of the courts of the country. (Citing a number of authorities).

"To the application of this doctrine it is quite immaterial whether the stream be named as a boundary of the lands granted, or there be a description by courses and distances from a fixed monument whereby a line is established coincident with the stream. The doctrine regards the substance of the grant, and not its form."

In concluding, on page 267:

"Confining ourselves to the requirements of the case, we conclude that the lands in controversy passed to the plaintiff in error by the deed from Mrs. Hall, because they were not by clear and apt terms excepted from its operation, and for the additional reason that, it being an express grant of her lands to the line of navigation, with all the privileges and appurtenances to the same belonging, the right asserted by the grantee is necessary to satisfy the express terms of the deed."

In the case of Lembeck v. Nye, 47 Ohio St. 336, it was held that:

"Where a conveyance is made of a tract of land upon the border of a non-navigable inland lake, the length of which is distinguishably greater than its breadth, by a description which makes the lake one of its boundaries, the presumption is that the parties do not intend that the grantor should retain the title to the land between the edge of the water and the center of the lake, and the title of the purchaser, therefore, will extend to the center thereof. But if the description be by metes and bounds, no reference being made therein to the lake, then only the land included within the lines, as fixed by the terms used by the parties to the deed, will pass to the grantee."

This case is relied upon by counsel for plaintiff; but the case, as it expressly appears, is limited to land lying under water that is not navigable, and the entire bed of which is susceptible of private ownership; and, as it is said by the Supreme Court in the Platt case already referred to, the Lembeck case was not intended to have, and cannot have, any application to land under navigable streams.

Among the cases that are cited with approval by the Supreme Court in the Platt case is the case of Norcross v. Griffiths, 65 Wis. 599. Paragraphs three and four of the syllabus are as follows:

"The owner of lands bordering upon a navigable stream and of the bed of the stream in front of such lands, may separate the ownership of such lands from the ownership of the bed of the stream, and convey them to different grantees.

"When the owner of lands bordering upon a navigable stream conveys a portion thereof described by metes and bounds which (although no reference is made to the stream) include the whole of the bank of the stream along the whole length of the part conveyed, it will be presumed that he intended to convey, and did convey, all his rights to the bed of the stream in front of the land described, to the middle of such stream; and the presumption can be rebutted only by actual reservation in the deed, or by evidence of such circumstances attending the making of the conveyance as clearly show an intention to limit the grant to the exact boundaries fixed by the description."

On page 810 of the opinion, omitting what is said as to streets and highways, the court say:

"Under the rule established by this court, as well as of other courts cited below, the important fact in the conveyance which raises the presumption of an intent to convey the bed of a navigable stream in front of the land conveyed, is that the bank of the navigable stream is in fact the boundary on the side of the land, described in the deed next to such stream, or that such bank of the stream is included within the bound-

aries mentioned in the deed on the side next thereto, although the line of the tract as described in the deed may extend beyond the bank of the river into the river. The fact that the line of the tract of land conveyed as described in the deed is a straight line from point to point, by course and distance, on the side next the river, and that no mention is made of the river, does not of itself overcome the presumption of an intent to convey to the center of the river, if such line be in fact substantially coincident with the bank of the river, and extends to or into the river."

Then a large number of cases are cited. I will refer, without reading them, to Richardson v. Prentice, 48 Mich. 88; Watson v. Peters, 26 Mich. 508; McDonald v. Whitehurst, 47 Fed. Rep. 757.

Several decisions of the Supreme Court of Minnesota were cited and relied upon by the plaintiff. I am not persuaded by an examination of those decisions that they apply to the facts of this case. I will refer to one of those decisions which, I think, contains the fullest discussion of the question. That is the case of Gilbert v. Eldridge, 47 Minn. 210. The syllabus of the case is as follows:

"The riparian right of the owner of lands on the shore of navigable water, as on our great lakes, to reclaim, improve, and occupy the land submerged by shallow water beyond the shore, may be disassociated from the shore-land by the act of the owner, so that a conveyance by him of the shore-land would not include such riparian rights as incident thereto.

"This principle applied in a case where the owner of shore-land platted it, together with the shallows beyond the shore, into town blocks and streets.

"The owner, after such platting, having conveyed an inland block with reference to the platting, and the water having gradually encroached upon the land until the shore line reached that block, held, that the riparian right to reclaim and use the platted blocks and streets in the water did not attach to the block thus conveyed as incident thereto".

In this case one Orrin Rice was the owner of a peninsula of land situated at the head of Lake Superior, and extending from the main land eastwardly into the water. On the northerly side of the peninsula is the Bay of Duluth; on the southerly side is St. Louis Bay. In 1858 Rice platted this peninsula and the submerged land for a considerable distance out into the Bay of Duluth into blocks and lots and streets. Embraced in this platting were two blocks, 108 and 110. Block 110 was on the northerly shore partly in the water; beyond 110. and northerly of it, other blocks, lots and streets were platted in the shallow water of the Bay. Block 108 was southerly of block 110, separated from it by a street, and was wholly above and back of the shore line. On December 31, 1858, Rice conveyed block 110, the shore block, to one Wilson, the grantor of the defendants. On the same day he conveyed block 108 to one Meeker, the grantor of the plaintiff. After such conveyance the water of the bay gradually encroached upon and washed away the northerly shore of the peninsula, and in 1885 this encroachment had extended so far inland that the shore line of the land passed across block 108, (block 110.and the intervening street having become submerged). The action was brought by the plaintiff, the owner of block 108, to enjoin the defendants, the owners of block 110, from filling block 110 so as to again raise it above the surface of the water; the plaintiff claiming that by the gradual encroachment of the water his land—block 108—had come to be the riparian estate, and that whatever riparian rights were originally incident to the shore line were vested in him as the riparian owner. This claim was disallowed by the court for the reasons stated in the syllabus.

The facts which distinguish this case from the case at bar, are, that the land upon the shore in front of plaintiff's premises, and for a long

distance out into the shallow water of the bay, was platted into blocks and streets; that the owner of the entire property severed by separate conveyances to different persons plaintiff's block from the defendant's block before any encroachment of the water, and that after the conveyance to the plaintiff the water encroached upon his land. In our case, none of the land in front of lots 11 and 12 was platted. It was simply left unplatted. There was no severance of ownership. Weaver, or his grantee, the plaintiff, continued to be the owner of lots 11 and 12 and the land in front to the center of the river, and the water encroached upon lots 11 and 12 before the conveyance, by the plaintiff to Bridge. So that, at the time of the conveyance, the river was the actual boundary of the lots.

It is conceded that the legal effect of the conveyances of lots 11 and 12, as platted, is the same as if the conveyance had been made by metes and bounds, corresponding with the courses and distances and dimensions of the lots as given on the plat. And in view of the principle of the Ohio cases and the authorities from other states there approved, I am constrained to hold that in making the conveyance of lots 11 and 12, the presumption arose that the plaintiff intended to convey, and did convey, all her right in the bed of the river in front of those lots. So far as the evidence shows, there were no circumstances surrounding the making of this conveyance which indicate an intention to limit the grant to the exact boundaries fixed by the description, and it seems to me, if it was intended, in conveying land actually situate upon the bank of the river, to exclude the rights ordinarily incident to a riparian estate, that the natural and proper and just thing to do was to make the proper exception in the deed.

Judgment in this case is therefore rendered for the defendant.

King & Tracy, for plaintiff.

C. W. Everett, for defendant.