VILLAGE OF WHITE BEAR *vs.* CATHERINE S. STEWART.

March 19, 1889.

**Statutory Dedication.**—Evidence in this case considered, and *held* to justify the finding of fact in the court below that there was no statutory dedication for the use of the public of the premises in litigation.

**Common-Law Dedication— Proof Requisite.**—The vital principle of a common-law dedication of land for public use is the intention, which must be unequivocally manifested, and clearly and satisfactorily appear.

**Same—Evidence.**— Evidence examined and considered upon this point. *Held*, that the court below did not err in its finding that there had been no dedication at common law of said premises.

Plaintiff, in June, 1887, brought this action in the district court for Ramsey county, to determine the adverse claim of defendant to a block of ground within plaintiff's corporate limits, alleged by plaintiff to have been dedicated to public use as a park by Dr. Jacob H. Stewart, deceased, in July, 1871. The defendant in her answer denied the alleged dedication, and averred that Dr. Stewart died seized in fee of the premises in 1884, and that in the distribution of his estate they were duly assigned to defendant as his widow, and that she is the absolute owner in fee. The plat of the town-site of White Bear, mentioned in the opinion, was filed for record July 8, 1871. The action was tried by *Brill*, J., who ordered judgment for defendant. A new trial was refused, and the plaintiff appealed.

*Romans & Orr* and *Williams & Goodenow*, for appellant.

*H. J. Horn*, for respondent.

COLLINS, J. Two leading questions are presented by this appeal: *First*. Upon the filing of the plat of the town-site of White Bear,

was there a statutory dedication for public use of the block of land in dispute, and now claimed as a park? *Second.* If not, has there since been a common-law dedication of the premises to the public?

It is beyond question, from the testimony, that, when the surveyor employed by Dr. Stewart to survey and lay out the town-site made the plat thereof, he placed the word "Park" on each of four blocks, three (not in controversy) in line, and bordering on the lake; the fourth, now in litigation, lying back of one of the three, and away from the water. It is also evident that in the certificate written by the surveyor upon the plat he specified but three parks, and that by this certificate, executed by Dr. Stewart and another just prior to filing the plat, there were but three parcels of land dedicated to the public for park purposes. And, in the absence of testimony to the contrary, it must be presumed that the plat appeared in evidence, upon the trial, in precisely the condition in which it was first filed for record with the register of deeds,—that is, with the word "Park" erased from the block in controversy, and the figures "46" written in pencil over the erasure. The testimony is also ample to warrant the belief that these figures, "46," (which is the number the block would have had if numbered in its order,) were placed upon the plat by Dr. Stewart himself. The evidence seems to us unmistakable that the proprietors of this town-site expressly, and as plainly as possible,—unless they had gone to the expense of having a new map made,—repudiated and disaffirmed the seemingly unauthorized act of the surveyor before mentioned. The court below was fully justified in its finding that there had not been a statutory dedication of the premises for the use of the public.

The second question is a more difficult one to determine from the evidence, but there is no substantial reason for concluding that the finding of the trial court thereon was erroneous. The evidence upon which plaintiff relied to establish a dedication *in pais* consisted of proof of certain acts, statements, and declarations of Dr. Stewart, about the time he platted the land, and when selling lots in the town-site. Acts, circumstances, and declarations, evidencing an intention to dedicate, are admissible in evidence as tending to show the owner's purpose, as well as those which tend to disprove such intent or

purpose.   *Downer* v. *St. Paul & Chicago Ry. Co.*, 23 Minn. 271.   It was shown that, as soon as the plat was completed, a tracing thereof, without the certificate alluded to, in which was mentioned three parks only, was furnished the doctor, hastily, as the witness stated, that it might be immediately lithographed.   A large number of prints were made and distributed, on which the block in dispute was marked "Park."   There was also testimony that on at least one occasion the doctor used one of the lithograph prints when conversing with a purchaser about the lots he contemplated buying.   About the year 1882 an agent for Dr. Stewart offered for sale all of the lots and blocks then owned by him in the village.   Purchasers were found, and in these negotiations a print used, upon which all lots and blocks previously sold or disposed of were said by the agent to be colored blue. It does not appear that Dr. Stewart knew anything of the use of such a plat, or knew that his agent represented the property offered and finally sold as all that he then owned in White Bear; nor does it appear that this representation was of any potency in the transaction, or in any manner induced the sale.   As a matter of fact, the three parks admittedly dedicated to the public upon the filing of the plat, the block of land in dispute, and another block out of which but one lot had been disposed of, were designated upon this plat as previously sold, and consequently were not included in the deed subsequently made.   For some reason, of no consequence as between these parties, this plat was incorrect in several essentials, and cannot be treated as evidence tending to show *animus dedicandi.*   The fact that these prints, which as we have seen differed from the original plat as filed, showed the tract in dispute to be a park, is not in itself, and independently of other evidence, of great weight.   It would become of consequence if there was evidence tending to show that third parties, when purchasing, relied upon the lithographs and what appeared thereon; that they were induced to act, to purchase lots, and to part with value, in consideration and on account of what was represented to them in regard to the rights of the public in the tract in litigation. *City of Logansport* v. *Dunn*, 8 Ind. 378.   We think the evidence fails to show that reliance was placed upon the prints by any one when buying property.

There is evidence, also, as to statements made about the time of the platting in regard to this land, and its public character. We cannot hold, in view of the many declarations to the contrary, and the frequent acts which clearly indicate a different purpose, some of which will hereafter be mentioned, that these imputed assertions and statements are clearly established. The vital principle of a common-law dedication of land for public use is the intention to dedicate, and, whenever this is unequivocally manifested, the dedication is complete, so far as the land-owner is concerned. Time, though often a material ingredient in the evidence, is not an indispensable essential. If accepted and used by the public in the manner intended, the act is complete. *Harding* v. *Jasper*, 14 Cal. 642. The intention to dedicate should clearly and satisfactorily appear. *City of Cincinnati* v. *White*, 6 Pet. 431; *Detroit* v. *Railway Co.*, 23 Mich. 173; *Noyes* v. *Ward*, 19 Conn. 250; *Manly* v. *Gibson*, 13 Ill. 308. The acts and declarations of the land-owner, indicating the intent to dedicate, must be unmistakable in their purpose and decisive in their character. Washb. Easem. 182. And the same rules of law apply to the dedication of public squares or parks as to the dedication of highways. *Village of Mankato* v. *Willard*, 13 Minn. 1, (13, 23.)

Acts, circumstances, and declarations effectually disproving an intention to dedicate this property to the public on the part of Dr. Stewart are found plentifully in the testimony. At the outset is his distinct and express repudiation, by an erasure, of the attempt of the surveyor to devote this tract to park or public use. The erasure from the plat of the word "Park," placed upon it by the surveyor, clearly manifested a design to retain this as private property with the other blocks, and this unequivocal act was supplemented by the execution of a certificate in which pains seem to have been taken to specify the parks in the town-site as three in number. We also find that he had stricken off from the tracing (discovered in his safe after his decease) the word "Park" as it appeared upon this block, and had substituted therefor, in his own handwriting, (precisely as on the original,) the figures "46." It was his practice to use this tracing when making sales. He had offered this block for sale upon more than one occasion, which was well known to the residents of the village and its of-

ficers, none of whom questioned his right, so far as we are advised; had exercised acts of ownership over it, notably in 1878 by putting a man in charge, and had often declared it his property. We are satisfied that the intent to dedicate was not clearly or satisfactorily made out, as against these many acts and declarations indicating a purpose to do nothing of the sort. As we sustain the court below upon this point, it is unnecessary to consider whether there was an acceptance by the public or not.

Order affirmed.