**SECURITY FEDERAL SAVINGS & LOAN ASSOCIATION, Appellant,**

v.

**C & C INVESTMENTS, INC., Gerald P. Schoenfelder, et al., Zapp National Bank of St. Cloud, The City of St. Cloud, Respondents,**

**and**

**Wenco of Minnesota, intervening defendant, Respondent.**

**No. C5-89-409.**

Court of Appeals of Minnesota.

Nov. 21, 1989.

Review Denied Jan. 18, 1990.

Michael J. Wahoske, Mark E. Hamel, John S. Clifford, Frank J. Magill, Jr., Dorsey & Whitney, Minneapolis, Steven R. Schwegman, Quinlivan, Sherwood, Spellacy & Tarvestad, P.A., St. Cloud, for Security Federal Sav. & Loan Ass'n.

Neil Polstein, Hillstrom & Bale, Ltd., Minneapolis, for C & C Investments, Inc., and Wenco of Minnesota, intervening defendant.

Winthrop A. Rockwell, Bruce L. Gritters, Faegre & Benson, Minneapolis, for Gerald P. Schoenfelder, et al.

Zapp Bank Plaza, St. Cloud, for Zapp Nat. Bank of St. Cloud.

Jan F. Petersen, St. Cloud City Atty., St. Cloud, for The City of St. Cloud.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and LOMMEN *, JJ.

## OPINION

FOLEY, Judge.

Appellant Security Federal Savings & Loan Association filed suit to quiet title to real property it owns in St. Cloud, Minnesota on May 7, 1986. Respondents, who are neighboring landowners and businesses, answered asserting that they had acquired easements in the property under various legal theories. Respondents later raised a claim that the public had acquired an easement under the doctrine of common-law dedication. The matter was tried to the court, and on October 20, 1988, judgment was entered in favor of respondents deter-

---

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. VI, § 2.

mining that the public had acquired an easement in a section of the property under the doctrine of common-law dedication and enjoining appellant from closing access to that section of the property.

However, the judgment did not describe the extent of the easement. Respondents filed a motion for amended findings of fact to determine the extent of the easement dedicated to the public. On November 7, 1988, appellant filed its own motion for amended findings of fact, conclusions of law and order for judgment, or in the alternative, a new trial. On January 26, 1989, the trial court issued an order denying appellant's motions, and entered a second judgment with amended fact findings describing the extent of the easement dedicated. On April 4, 1989, this court accepted jurisdiction of the appeal from the January 26, 1989 order and judgment and granted review of the October 20, 1988 judgment. We reverse both judgments.

## FACTS

Appellant is fee owner of a platted parcel of property (Parcel) described as Lot 10, Block 1, Crossroads Addition to the City of St. Cloud, Stearns County, Minnesota, where it operates a branch office. The Parcel's eastern boundary is shared with two properties, one on the northern half owned by respondent Crossroads Liquors, Inc. and one on the southern half owned by respondent Gerald P. Schoenfelder and leased to respondent Wenco of Minnesota, as assignee of respondent C & C Investments, Inc. Hereinafter, Wenco and C & C Investments are referred to jointly as "Wendy's." The Parcel is bounded to the north by Perimeter Road, which carries traffic through and around the Crossroads Shopping Center (Center). The Parcel shares its western boundary with a property on which a Goodyear station is operated. Division Street forms the southern boundary of the Parcel.

There are two curbcuts or driveways that westerly moving traffic can use to enter the Parcel from Division Street. One curbcut allows access to the southwestern section of the Parcel and is not the subject of this dispute. Approximately 100 feet to the east lies a curbcut, 30 to 40 feet wide, which vehicles use to enter appellant's parking lot. Vehicles also use this southeastern curbcut (Curbcut) to enter or exit the Center to the north by way of Perimeter Road. Vehicles also traverse the eastern boundary of the Parcel into Wendy's and Crossroads Liquors. The trial court and respondents referred to the Curbcut and the disputed eastern third of the Parcel as a roadway or an "accessway," while appellant used the term "private drive" or "parking lot." For purposes of this opinion, we employ the term "Section" to encompass the Curbcut and the disputed area of the Parcel.

The properties adjoining the Parcel are all part of the Center. The Center is comprised of an enclosed shopping mall to the north of the Parcel, various other businesses, internal roads and parking areas. At the time the Center opened in 1965, Plaza Park Bank was fee owner of the Parcel. Plaza Park Bank declined to join the Center's merchant association or receive other benefits in association with the Center after the Center opened. Subsequently, respondent Schoenfelder had parking blocks placed in a substantially continuous line around the east, north and west boundaries of the Parcel. The trial court found that gaps in the line of parking blocks allowed cars to pass across the northern boundary of the Parcel from the time up to and after the time of appellant's purchase of the Parcel in 1971.

In 1972 the parking blocks were removed. Since 1972, when appellant and Crossroads Liquors opened for business, patrons of the Center and appellant as well as the general public have had south-north access through the Section between Division Street and Perimeter Road. The trial court found that travel across the eastern boundary of the Section to Wendy's and Crossroads Liquors has been essentially unimpeded since 1972. The trial court found that the results of a traffic study conducted between 1976 and 1986 indicated that more than 2,000 vehicles per day entered the Center through the Section and

between 89 and 274 per day exited the Center through the Section, and that no notices were posted to indicate that the Section was private property for the exclusive use of appellant's patrons.

Over this period, appellant made little attempt to prevent traffic from going into Crossroads Liquors or from travelling south-north by way of the Section. However, from March 1, 1976 to December 16, 1985, an easement agreement was in effect between appellant and Wendy's. Under the agreement, appellant allowed Wendy's and its patrons access through the Curbcut and Section and into the Wendy's property for a fee of $50 per month. Following the termination of this easement, appellant brought this action for a determination of all adverse claims of a right-of-way over the Section. *See* Minn.Stat. § 559.01 (1988).

The trial court found that the "public has come to rely on the [Section] as an entrance to the Center and to Crossroads Liquors and Wendy's and would be materially affected by the interruption of access" to the Section. It found the businesses located in and around the Center would also be adversely affected if the Curbcut and Section were closed. The trial court specifically rejected arguments that respondents had obtained possession of the Section under a theory of adverse possession. The trial court concluded that appellant had dedicated the eastern portion of the Parcel to the public use and that the public had acquired an easement under the doctrine of common-law dedication. Appellant was ordered not to close the Curbcut or Section to use by the public.

## ISSUE

Did the evidence sustain the trial court's findings of fact and did such findings sustain the trial court's conclusions of law and judgment that under the doctrine of common-law dedication the public acquired an easement in appellant's property?

## ANALYSIS

Appellant made a motion for a new trial. Because we hold that the evidence does not support a finding of common-law dedication, it is unnecessary to discuss the matter of a motion for new trial. Here we need only review the judgments.

On appeal from a judgment, this court must consider "whether the evidence sustained the findings of fact and whether such findings sustained the conclusions of law and the judgment." *Tonka Tours, Inc. v. Chadima,* 372 N.W.2d 723, 728 (Minn.1985). A trial court's findings on disputed questions of fact will not be reversed unless manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole. *Id.* at 726 (citing *Northern States Power Co. v. Lyon Food Products, Inc.,* 304 Minn. 196, 201, 229 N.W.2d 521, 524 (1975)).

■ Appellant contends the trial court erred in determining that the Section became a public accessway under the doctrine of common-law dedication. Under this doctrine, an easement may be established in favor of the public if (1) a landowner intends (either expressly or impliedly) to have his land appropriated and devoted to the public use, and (2) there is public acceptance of the land for that use. *Flynn v. Beisel,* 257 Minn. 531, 540, 102 N.W.2d 284, 291 (1960); *Henly v. County of Chisago,* 370 N.W.2d 920, 923 (Minn.Ct.App.1985).

Ordinarily, when the evidence conflicts "as to whether the owner intended to dedicate and whether the public accepted the dedication, then the ultimate question of dedication is peculiarly one for the finder of fact." *Flynn,* 257 Minn. at 540, 102 N.W.2d at 291; *see also Daugherty v. Sowers,* 243 Minn. 572, 575, 68 N.W.2d 866, 869 (1955); *Keiter v. Berge,* 219 Minn. 374, 380, 18 N.W.2d 35, 38 (1945); *Morse v. Zeize,* 34 Minn. 35, 38, 24 N.W. 287, 288 (1885).

Here, the operative facts relating to intent and acceptance were disputed at trial. A question of public dedication is one of fact, and the trial court's determination on the matter will not be reversed unless it is clearly erroneous. *Wojahn v. Johnson,* 297 N.W.2d 298, 303 (Minn.1980). Here, even applying a *Wojahn* standard of review, we conclude that the trial court's

findings of fact are clearly erroneous as not reasonably supported by the evidence as a whole.

In support of its conclusion that the public had acquired an easement over the Section, the trial court determined that appellant's intent to dedicate the Section to the public use "is implied through its long practice of allowing the public to use" the Section to enter the Center, Crossroads Liquors and Wendy's. The trial court also determined that the public had accepted the dedication through its "long time use" of the Section to gain access to businesses other than appellant's. Both these determinations are unsupported by the weight of the evidence.

### Implied Intent to Dedicate

There can be no dedication without the landowner's intent and such

> intent need not be express, and in fact need not actually exist in the owner's mind, but may be implied from acts and conduct of the owner which are unequivocally and convincingly indicative of a dedication and upon which the public has a right to and does rely.

*Daugherty,* 243 Minn. at 574–75, 68 N.W.2d at 868 (footnotes omitted). The trial court did not make any findings that appellant expressly intended to dedicate the Section to the public use. Rather, it found that appellant *impliedly* intended a dedication. However, the evidence in this case does not support a finding that the acts and conduct of appellant *unequivocally and convincingly* indicate an intent to dedicate nearly a third of its land to the public as a roadway.

■ Acts and declarations of a landowner must be unmistakable in purpose and decisive in character for a trial court to determine that an intent to dedicate exists. *In re Stees,* 142 Minn. 340, 344, 172 N.W. 219, 221 (1919); *Village of White Bear v. Stewart,* 40 Minn. 284, 287, 41 N.W. 1045, 1046 (1889) ("The vital principle of a common-law dedication of land for public use is the intention to dedicate, and, whenever this is unequivocally manifested, the dedi-

cation is complete so far as the land-owner is concerned.").

■ Here, the mere acquiescence of appellant in allowing its customers, shopping center patrons, and "the public" to use the Section, given the evidence in the record as a whole, does not support a finding or conclusion that appellant had the intent necessary for a common-law dedication. It is true that "acquiescence, without objection, in the public use for a long time, is such conduct as proves and indicates to the public an intention to dedicate." *Klenk v. Town of Walnut Lake,* 51 Minn. 381, 385, 53 N.W. 703, 704 (1892) (uninterrupted use as a highway by public for 20 years held sufficient evidence of common-law dedication); *see also Dickinson v. Ruble,* 211 Minn. 373, 375, 1 N.W.2d 373, 374 (1941) (public use of alleyway for 15 years established existence of acquiescence by landowner for purposes of common-law dedication). Accordingly, the trial court relied on its findings that "millions of cars" have used the Section in travelling to and from the Center and that appellant did not prevent public access or notify the public that the Section "was for the exclusive use of customers of Security Federal."

However, the private and public use involved here, through a section of a parking lot adjoining a modern shopping center complex, is not a sufficient basis for a finding of implied intent to dedicate.

> What is a sufficient user is peculiarly a question of fact and *varies according to the circumstances of each case.* The intent to dedicate is the same in all cases. *The user to establish that intent may be of short or of long duration, depending upon the character and extent of the use as well as upon the nature of the surrounding area.*

*Daugherty,* 243 Minn. at 576–77, 68 N.W.2d at 869 (emphasis added). The character and extent of the use involved here, the nature of the surrounding land and the land itself, and the circumstances of this case prevent any implication that appellant intended a dedication.

■ As appellant asserts, the use involved here was merely permissive. The

Minnesota Supreme Court long ago quoted with approval the following passage from *Commonwealth v. Kelly,* 8 Gratt. 632 (Va. 1851):

A permission to pass over land may prove an intention to dedicate, or a mere license, revocable at the will of the owner; and we think that the mere permission to pass over land ought in this state to be regarded as a license. For why shall we infer that an individual makes a gift of his property to the public from an equivocal act, which equally proves an intention to grant a mere revocable license?

*Stees,* 142 Minn. at 344, 172 N.W. at 221. In *Stees,* the court also said:

In *Village of White Bear v. Stewart,* 40 Minn. 284, 41 N.W. 1045, it is said: "The acts and declarations of the landowner, indicating the intent to dedicate, must be unmistakable in their purpose and decisive in their character. * * *." There was no evidence of acts or declarations of that character here.

*Stees,* 142 Minn. at 344, 172 N.W. at 221 (citation omitted).

Here, appellant offered testimony that it allowed the flow of traffic through the Section for the benefit of its customers and in hopes that other passers-through would be attracted to doing business with appellant.

Accordingly, mere permissive use of land as a street or the like, where the user is consistent with the assertion of ownership by the alleged dedicator, does not of itself constitute a dedication nor demonstrate a dedicatory intention.

11 E. McQuillan, *The Law of Municipal Corporations* § 33.32, at 717 (3d ed.1983) (footnote omitted). Appellant should not be penalized now when it may wish to revoke such permission with respect to respondents. We find the common sense approach embodied in the above authority to be applicable herein.

Respondents have cited no authority where a parking lot in a surrounding commercial area was dedicated to the public use under circumstances or uses similar to this case. Other states, however, specifically have addressed the parking lot question. *See Thrash v. Wood,* 215 Ga. 609, 613–14, 112 S.E.2d 578, 581 (1960); *Lowry v. Rosenfeld,* 213 Ga. 60, 63(2), 96 S.E.2d 581, 583–84 (1957); *Blank v. Park Lane Center, Inc.,* 209 Md. 568, 576, 121 A.2d 846, 848 (1956) (no common-law implied dedication occurred where parking lot/driveway in commercial area was used "by persons not desiring to shop or to park, but who intended to drive [through] as a matter of convenience or to avoid a traffic light").

Here, as in *Blank,* the evidence showed that some of the general public used the Section as a convenient shortcut, but the testimony did not distinguish these cars from patrons of the commercial area. Nor should appellant have attempted to make such a distinction here.

Merely because [the Railroad] did not put up a sign forbidding general public use, or did not adopt some wholly impractical method of trying to ascertain the purpose of any vehicle entering the driveway, does not indicate an intention to dedicate.

*Association of Independent Taxi Operators v. Yellow Cab Co.,* 198 Md. 181, 191, 82 A.2d 106, 110 (Md.Ct.App.1951). The record indicates that the use contemplated here was for patrons of appellant and the Center and not for the general public or the City of St. Cloud. *See Scottsdale v. Mocho,* 8 Ariz.App. 146, 151, 444 P.2d 437, 442 (1968) (subdivider did not intend common-law, or plat dedication of parking lot to local government where use contemplated was not for general public but for a limited clientele).

The character and extent of the use here, when considering the nature of the surrounding area and the circumstances of this case, clearly indicate that the evidence was insufficient to support the trial court's findings on intent. *See Daugherty,* 243 Minn. at 577, 68 N.W.2d at 869.

■ One additional factor that negates the alleged intention of appellant to dedicate was the easement it granted to Wendy's. The trial court mentioned the existence of this easement, it appears, as an

after-thought in issuing its amended findings of fact. Respondents conceded at oral argument that the easement is evidence that tends to disprove appellant's intention to dedicate. *See State v. Fischer,* 245 Minn. 1, 5, 71 N.W.2d 161, 165 (1955) (acts of ownership and control disprove owner's intent to dedicate). We agree with appellant that there is substantial evidence in the record showing that appellant exercised dominion and control over the Section. The written easement agreement is just one example of appellant's assertion of its property rights over the Section.

We concur with the holding in *Stees* that there are no acts and declarations by appellant of the decisive character needed to establish public dedication of a right-of-way through appellant's property.

*Public Acceptance of the Dedication*

 Because we hold that the evidence in the record does not reasonably support a finding of intent to dedicate by appellant, it is not necessary to discuss extensively the public acceptance element of common-law dedication. However, it is important to note that the City of St. Cloud has disclaimed any interest in the Section.

Although local government acceptance of land is not mandatory to establish a common-law acceptance by the public, here the failure of local authorities to assert rights in the alleged public easement is evidence of a lack of public acceptance of the Section.

The city has also denied any responsibility for the maintenance and repair of the Section, which it normally must assume in trust for the public. *Ellsworth v. Lord,* 40 Minn. 337, 339, 42 N.W. 389, 390 (1889); *see also Bengston v. Village of Marine on St. Croix,* 310 Minn. 508, 510–11, 246 N.W.2d 582, 585 (1976); *Allen v. Village of Savage,* 261 Minn. 334, 338–39, 112 N.W.2d 807, 811 (1961). The effect of the trial court's ruling is to require appellant to subsidize a public road. We reject this result as a matter of policy.

DECISION

The evidence does not reasonably support the trial court's findings and conclusions of law that appellant intended to dedicate the Section to the public use, and the public accepted that use, under the doctrine of common-law dedication. We reverse with directions to quiet title to the disputed property exclusively in appellant, denying to respondents and the general public any interest therein.

Reversed.